UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
AUG 0 2 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-548-GWU

WANDA NAPIER, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Napier

> Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.
>
> 4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).
>
> 5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
> 6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).
>
> 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Napier

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively

3

established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

4

Napier

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most

of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Wanda Napier, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of lumbar spine degenerative disc disease, restless leg syndrome, mild speech apraxia, and obesity. (Tr. 18). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mrs. Napier retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 20-3). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to "light" level exertion, and also had the following non-exertional impairments. (Tr. 266). She: (1) needed a job that would not require more than "understandable speech," such as no sales or telemarketing jobs; (2) could occasionally climb ramps or stairs, stoop, crouch, crawl, and kneel; (3) could not climb ladders, ropes, or scaffolds; and (4) would need the option of sitting or standing at will. (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Id.).

7

Napier

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mrs. Napier alleged disability beginning January 1, 2002, the date she stopped working when her employer closed its plant. (Tr. 72). She alleged problems with a speech impairment, a bulging disk, and high blood pressure. (Tr. 71). At the administrative hearing, she also described problems with numbness in her right side, including her right leg, which caused her to fall frequently. (Tr. 248). She admitted that her hypertension was under control with medication. (Tr. 249). Mrs. Napier also described nervousness because she knew that he could not get another job, although the medication her family doctor had given her, Amitriptylene, helped and had no side effects. (Tr. 250-1). She had back soreness, for which she took over-the-counter medications, and this condition gave her some trouble with dressing, but she was able to go to church and drove her car three to four times a week to run errands for her daughter. (Tr. 245, 253-5). She thought her family physician, Dr. Morton, had limited her to lifting no more than five to ten pounds, but she was not certain. (Tr. 256, 258). He had obtained an MRI of the lumbosacral spine, but did not discuss the results with her. (Tr. 257-8). Mrs. Napier also described hand problems, which caused her to drop items; however, her hobby was sewing, and she had made a dress recently. (Tr. 252, 261).

apparent distress, with normal posture, normal cognitive function, and intact sensation except for a patchy decrease in the right arm and leg. (Tr. 146). Strength and reflexes were normal, and there was no impairment of walking other than "very mild favoring" of the right leg. (Tr. 146-7). On musculoskeletal examination, the physician observed no pain and a full range of motion. (Tr. 147). Dr. Shojaei ordered EMG/NCV testing of the lower extremities to rule out lumbosacral radiculopathy, and these tests were normal. (Tr. 142, 144). An MRI of the lumbosacral spine showed mild bulging and some disc degeneration but with no focal herniation. (Tr. 122, 142). Dr. Shojaei noted negative straight leg raising at 90 degrees and a good range of motion of the lumbosacral spine. (Tr. 142). His assessment was "musculoskeletal back pain" and "restless leg syndrome," for which he prescribed Neurontin which was apparently helpful in reducing the plaintiff's symptoms at night. (Tr. 140,143). No functional restrictions are given.

Dr. Mark Carter conducted a consultative physical examination on October 15, 2003, and also reviewed the MRI and EMG/NCV test. (Tr. 183). The plaintiff stated that medication prescribed for hypertension seemed to have reduced her episodes of right-sided numbness, but she still had this problem intermittently, although it was not exactly the same from time to time. (Id.). She also complained of global right leg pain. (Id.). On examination, Dr. Carter found Mrs. Napier to be deconditioned, obese, and noted that she walked with a mild right-sided limp; she also had mild apraxia in speech, but was understandable. (Tr. 184). She had

10

decreased muscle tone consistent with deconditioning, and lower lumbar spine tenderness, but with no spasm, and a negative straight leg raising test. (Id.). Mrs. Napier could bend forward 70 degrees at the waist, and walk on her heels without difficulty, but her mild limp returned when walking on her toes. (Tr. 184-5). She could perform one-half of a knee squat. (Tr. 185). Dr. Carter's impression was of obesity, deconditioning, mild speech apraxia, hypertension under fair control with no end organ damage, and low back pain with no focal findings of radiculopathy. (Id.).

State agency physicians who reviewed the record to this point concluded that the plaintiff could perform medium level exertion with occasional climbing of ladders, ropes, and scaffolds, stooping, crawling, and a limited ability to speak. (Tr. 190-8, 200-7). These restrictions are consistent with the hypothetical question.

Subsequently, in December, 2003, the plaintiff was evaluated by Dr. Christa U. Muckenhausen, a neurologist, for a worker's compensation claim. (Tr. 123). Dr. Muckenhausen also reviewed the MRI (Tr. 124), and she found reduced sensation in the right leg, slightly reduced grip in both hands, and forward flexion limited to only 40 degrees. (Tr. 128-30). She diagnosed degenerative disc disease and osteoarthritis of the lumbosacral spine, lumbosacral radiculopathy in the right leg, right shoulder joint pain with rotator cuff impingement syndrome, and bilateral carpal tunnel syndrome secondary to overuse. (Tr. 124). Dr. Muckenhausen concluded that Mrs. Napier would be limited to lifting a maximum of 10 pounds occasionally and

less than 10 pounds frequently, and less than full-time sitting, standing, and walking. (Tr. 126).

Dr. Morton, the family physician, prepared a functional capacity assessment on March 27, 2004 limiting Mrs. Napier to even a greater degree in terms of standing and walking, and also noting that she would need to change positions every 10 to 15 minutes or at will, would have to lie down at unpredictable intervals during the day, due to degenerative disc disease on the MRI, could never twist, stoop, or climb ladders, and could only occasionally crouch or climb stairs, had limitations on reaching, handling, pushing, and pulling due to right shoulder impingement, and needed to avoid concentrated exposure to extreme cold and heat, wetness, humidity, noise, fumes, and hazards. (Tr. 180-2).

The ALJ rejected the opinions of Dr. Morton and Dr. Muckenhausen on the grounds that they were not supported by sufficient objective evidence. (Tr. 19). Certainly, as a one-time examiner, the opinion of Dr. Muckenhausen can be offset by the opinion of Dr. Carter, who was also a one-time examiner with access to objective testing. The ALJ also noted that, according to these opinions, the claimant would have to lie down for most of the day, but the plaintiff testified that she spent more time sitting during the day than lying, which contradicted the opinions of the physicians. (Tr. 19, 264). It is also noteworthy that, although Dr. Morton described right shoulder impingement syndrome, an x-ray of the right shoulder taken at his direction was normal. (Tr. 173).

12

Napier

Although normally the opinion of a treating source, such as Dr. Morton, is entitled to greater weight than the opinion of a one-time examiner or of nonexamining reviewers, under the circumstances of this case, with very few objective findings listed in Dr. Morton's notes along with certain apparent contradictions in his findings, with both Dr. Carter and another physician, Dr. Shojaei, a treating source, finding few abnormalities on examination, and largely negative results from objective testing, the ALJ could reasonably have relied upon the opinions of the state agency reviewers.

The plaintiff's argument that the ALJ did not properly consider her complaints of subjective pain are without merit. (Tr. 20). Likewise, her argument that he failed consider her impairments in combination is also not supported by a review of the hearing decision. (Tr. 18).

The decision will be affirmed.

This the \_\_\_2\_\_\_ day of August, 2006.

G. WIX UNTHANK
SENIOR JUDGE

13